UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NORMAN MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15 CV 577 RWS |
| | ) | |
| COTTRELL, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER OF REMAND

Norman Miller was injured while securing automobiles on a truck[1] for his employer Jack Cooper Transport Company. He sued Cottrell, Inc. and General Motors, the designers and manufacturers of the truck, and Auto Handling Corporation ("AHC"),[2] the company which serviced the truck, for strict liability, negligence, and tort claims in state court. Miller's employer is not a party to this action. The case proceeded in state court from February 6, 2015 until it was removed to this Court by Cottrell[3] on April 3, 2015 on the basis of diversity jurisdiction and federal question jurisdiction. See 28 U.S.C. §§ 1331, 1332.

Despite there being no claim for relief based on federal law in the complaint, Cottrell argues that there is federal question jurisdiction. Cottrell argues that because Miller was a member of a union at the time of his accident and because that union was a party to a collective bargaining agreement with Jack Cooper, Miller's claims are completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* ("LMRA"). This is so, Cottrell argues, because Miller's alleged injuries stem from defendants' conduct in relation to an

---

[1] Miller alleges he was injured while maneuvering on the upper deck on the truck because it did not have adequate slip-resistant materials, fall protection, warnings, and other manufacturing defects.
[2] ACH is a subsidiary corporation of Jack Cooper.
[3] General Motors and AHC consented to the removal.

area covered by the CBA, namely, truck maintenance and safety standards Jack Cooper provided for its employees.

Additionally, despite the fact that plaintiff Miller and defendant AHC are both citizens of Missouri, Cottrell argues that there is diversity jurisdiction because AHC was fraudulently joined. Cottrell argues that AHC was fraudulently joined based on two theories. First, because the claims against AHC are preempted by the LMRA, and second, because Missouri's workers' compensation laws provide the exclusive remedy for Miller's claims against AHC. For the reasons that follow, I conclude that the claims are not preempted and AHC was not fraudulently joined. Because Miller's claims do not arise under federal law and because there is no diversity jurisdiction, I will grant Miller's motion for remand to state court.

## Discussion

Any civil action brought in a state court over which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(b). If the federal court determines it does not have subject-matter jurisdiction over a removed action, it must remand the action to state court where it originated. 28 U.S.C. § 1447(c). Removal statutes are strictly construed, and any doubts about the propriety of removal must be resolved in favor of remand. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993). As the party invoking jurisdiction, defendant has the burden of establishing that prerequisites to jurisdiction have been satisfied. Id. To determine whether removal was proper, the court must look to the plaintiff's pleadings at the time of removal. Pullman Co. v. Jenkins, 305 U.S. 534, 537–38, 59 S.Ct. 347, 83 L.Ed. 334 (1939). The basis for federal jurisdiction must be apparent from the face of the plaintiff's properly pleaded complaint, rather than from any defenses

asserted by the defendant. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). However, "[w]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." Aetna Health, Inc. v. Davila, 542 U.S. 200, 207, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (internal quotation marks and citation omitted). Additionally, fraudulent joinder is an exception to the complete diversity rule. In re Prempro, 591 F.3d at 620. "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." Id.

The defendants have alleged federal jurisdiction on removal based upon Section 301 of the LMRA, which states that federal law governs "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The Supreme Court has held that federal law exclusively governs suits for breach of a CBA, and thus, § 301 of the LMRA applies with preemptive force. United Steelworkers v. Rawson, 495 U.S. 362, 369, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). Section 301 preempts state law claims that are "substantially dependent upon analysis" of a CBA, Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), because "the application of state law . . . might lead to inconsistent results since there could be as many state-law principles as there are States . . . ." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 406, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); see also Williams v. National Football League, 582 F.3d 863, 874 (8th Cir.2009).

To decide whether a claim is completely preempted, the Court begins with the "claim itself" and applies a two-step approach to determine if the claim is sufficiently "independent" to survive § 301 preemption. Williams, 582 F.3d at 874 (internal citation omitted). First, a state law claim is preempted if it is "based on" a provision of the CBA, meaning that "the CBA

provision is at issue" and "it actually sets forth the right upon which the claim is based." Id. Second, § 301 preemption applies where a state law claim "is dependent upon an analysis of the relevant CBA," meaning that the resolution of plaintiff's state law claim requires interpretation of a provision of the CBA. Id. However, section 301 does not preempt state law claims merely because the parties involved are subject to a CBA and the events underlying the claim occurred on the job. See Lueck, 471 U.S. at 211, 105 S.Ct. 1904 ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ."); see also Graham v. Contract Transp., Inc., 220 F.3d 910, 913 (8th Cir. 2000) (providing that "a claim is not preempted simply because it relates to a dispute in the workplace").

In this case, the adjudication of Miller's claims is not based on and does not require interpretation of the CBA between Miller's union and Jack Cooper. Although the CBA specifies Jack Cooper's duties to its employees (including requiring maintenance of non-skid paint and slip-resistant materials on walkways), Jack Cooper is not a party to this action, and neither Cottrell nor General Motors are parties to the CBA. Therefore, they have no duties under the agreement. Additionally, Cottrell is not subject to any restrictions imposed by the CBA in the way that it designs and manufactures equipment.

AHC is not Miller's employer, either, despite AHC's attempts to argue that it should be considered an employer under the "single employer" doctrine. Nor have defendants shown that AHC was a party to the CBA that was in effect when Miller was injured. Defendants have not produced a CBA governing the relevant time period signed by AHC. Additionally, their argument that AHC was likely a party to the relevant CBA (i.e., the CBA in effect on May 9,

4

2011, the date Miller was injured) because AHC signed CBAs that were in place during other time periods, and because Miller's union ratified AHC's name change to Jack Cooper in May 2015, fails to establish that AHC was Miller's employer when he was injured. Instead, the evidence suggests that AHC was not a signatory to the CBA that was in place at the time Miller was injured, nor was it listed as an "employer" in the employer appendix. [#23], Ex. 36 at 4.

Simply put, the terms of the CBA between Miller's union and Jack Cooper have nothing to do with resolving the issues presented by this case: whether Cottrell and General Motors satisfied their state-law duties to provide a reasonably safe product and whether AHC satisfied its state-law duties in connection with the maintenance of the trucks. These duties exist independent of the CBA, and Miller's claims are not dependent upon an interpretation of the CBA just because Jack Cooper may have been required to provide truck maintenance under its terms. Miller's claims focus on duties owed any member of the public as a matter of state law, and the terms of the CBA have nothing to do with resolving those issues. Nor would it "comport with federal labor policy to have one rule for union members and another for the rest of the work force." In re Bentz Metal Products Co., Inc., 253 F.3d 283, 288 (7th Cir. 2001).

Cottrell argues that the duties Miller alleges were breached do not exist under common law, and therefore Miller's claims depend on duties created by the CBA. However, even if the CBA were a source of ACH's duties towards Miller, Miller only seeks relief based on ACH's common law duties. The state court is perfectly capable of determining whether AHC breached its common law duties. If the state court concludes that AHC did not breach any common law duties, then Miller's claims will fail. The state court need not determine whether the CBA creates such duties, nor need it interpret the scope of any such duties, to decide if Miller has a

5

tort claim under state common law. A claim is not completely preempted by Section 301 of the LMRA if it simply "relates in some way to a provision of the collective-bargaining agreement, or more generally to the parties to such an agreement." Lueck, 471 U.S. at 220, 105 S.Ct. 1904. Because the LMRA does not preempt Miller's claims, there is no federal question jurisdiction. Nor can LMRA preemption serve as a basis for Cottrell's fraudulent joinder argument.

Cottrell has also alleged fraudulent joinder of AHC and resulting diversity jurisdiction based on Missouri's workers' compensation laws. When determining if a party has been fraudulently joined, a court considers whether there is any reasonable basis in fact or law to support a claim against a nondiverse defendant. Wilkinson v. Shackelford, 478 F.3d 957, 964 (8th Cir. 2007). "'[I]f there is a 'colorable' cause of action – that is, if the state law *might* impose liability on the resident defendant under the facts alleged – then there is no fraudulent joinder.'" Filla v. Norfolk Southern Ry.Co., 336 F.3d 806, 810 (8th Cir. 2003) (emphasis in original). In predicting whether "state law might impose liability based upon the facts involved," "the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." Id. at 811. If there is doubt, "the better practice" is "simply to remand the case and leave the question for the state courts to decide. Id.

Cottrell argues that Missouri's workers' compensation laws apply to Miller's claims against AHC and therefore bar Miller from bringing his tort claims against AHC. Missouri's workers' compensation laws provide that workers' compensation is the exclusive remedy for personal injury claims brought by an "employee" against his or her "employer" "arising out of and in the course of the employee's employment." RSMo. § 287.120.1.

6

"The party asserting the existence of statutory employee status bears the burden of proving that the injured person was a statutory employee of the purported statutory employer." McCracken v. Wal-Mart Stores E., LP, 298 S.W.3d 473, 480 (Mo. 2009). "One is a statutory employee if (1) the work is performed pursuant to a contract, (2) the injury occurs on or about the premises of the alleged statutory employer and (3) the work is in the usual course of the alleged statutory employer's business." Id. "Whether a particular sort of work is within a party's usual course of business is a fact-driven inquiry." Id.

Cottrell fails to prove any of the three elements. Here, the facts as pleaded suggest that Miller was working for Jack Cooper as a carhauler, not pursuant to any contract with AHC. Cottrell cites no evidence that AHC signed any CBA covering the May 9, 2011 injury date, let alone one intended to cover Jack Cooper employees (as opposed to AHC employees). Additionally, the injury did not occur on or about the premises of AHC; Plaintiff's injury occurred while he was on a Jack Cooper trailer at the Jack Cooper terminal. See #[23], Ex. 35 at 35. Miller was injured while he was doing carhauling work, whereas the usual business of AHC was to have mechanics service the Jack Cooper trailers.

Moreover, the fact that AHC is a wholly-owned subsidiary of Jack Cooper does not make it Miller's employer for workers' compensation purposes. In Missouri, it is well-established that subsidiaries or parents of employers cannot invoke the workers' compensation exclusive remedy protections. See Boswell v. May Centers, Inc., 669 S.W.2d 585, 587 (Mo. App. E.D. 1984). The defendants' argument that AHC should be considered to be Miller's employer under the "single employer" doctrine because Jack Cooper essentially controls AHC also fails. Defendants have not cited any Missouri cases applying the single employer doctrine to extend workers'

compensation exclusivity to a subsidiary, nor have I found any. And following the 2005 amendments, Missouri's workers' compensation laws, including the exclusive remedy provisions, are now strictly construed. See Miller v. Missouri Highway & Transp. Comm'n, 287 S.W.3d 671, 673 (Mo. 2009); Robinson v. Hooker, 323 S.W.3d 418, 424 (Mo. App. 2010) (internal citations omitted). Furthermore, it is Missouri policy that "[c]ommon law rights and remedies should not be taken from an employee unless they are abolished by clear and unambiguous terms."[4] Boswell v. May Centers, Inc., 669 S.W.2d 585, 586-87 (Mo. App. E.D. 1984). Here, it is certainly not clear and unambiguous that AHC is Miller's employer. Rather, it appears that Miller was a Jack Cooper employee, injured on Jack Cooper property, while doing work typically done by Jack Cooper employees.

For all of these reasons, I conclude that the removing defendants have not met their burden of establishing by a preponderance of the evidence that this Court has subject-matter jurisdiction over this case. As a result, this case will be remanded to state court.

Finally, I have also considered Miller's request for attorneys' fees and costs incurred in connection with bringing the motion to remand. 28 U.S.C. § 1447(c) permits a district court, in its discretion, to award costs and attorneys' fees upon remand. Although a close question, I will deny the award of fees and costs because I find that defendants at least arguably had an objectively reasonable basis for removal. See Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005) (award of fees turns on reasonableness of removal); see also Lovins–Kapler v. Teva Pharmaceuticals, USA, Inc., 2012 WL 208321, *5 (W.D.Mo. Jan. 24, 2012) (fees and costs denied for questionable removal to prevent defendants from

---

[4] I also note that, even if the workers' compensation laws governed Miller's claims against AHC, remand would still likely be appropriate because removal of "a civil action in any State court arising under the workmen's compensation laws of such State" is prohibited by 28 U.S.C. § 1445(c).

appealing and further delaying the return of case to state court). This case is remanded to the Circuit Court of St. Charles County, Missouri under 28 U.S.C. § 1447(c).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for remand #[23] is **GRANTED**, and this case is remanded to the Circuit Court of St. Charles County, Missouri, pursuant to 28 U.S.C. § 1447(c).

**IT IS FURTHER ORDERED** that all pending motions are denied as moot.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 4th day of August, 2015.